[Sac. No. 7829. In Bank. Jan. 29, 1969.]

WILLIAM YOUNGMAN et al., Plaintiffs and Appellants, v. NEVADA IRRIGATION DISTRICT et al., Defendants and Respondents.

Neyhart, Grodin & Beeson, Neyhart & Grodin, Edward C. Pinkus and Joseph R. Grodin for Plaintiffs and Appellants.

Minasian, Minasian & Minasian, Minasian & Minasian, Paul R. Minasian and David H. Minasian for Defendants and Respondents.

MOSK, J.—Plaintiffs in this action are William Youngman, an employee of the Nevada Irrigation District, and Local 1245 of the International Brotherhood of Electrical Workers (hereafter IBEW), which represents employees of the district. Defendants are the district and its directors. Plaintiffs filed a complaint asserting that the district's employees were entitled to salary increases in 1965 on the basis of merit, that the district had entered into an implied and an express contract to grant such increases, but that it had refused to do so. Defendants filed a demurrer specifying both general and special grounds, and it was sustained by the trial court without leave to amend. Plaintiffs appeal from the ensuing judgment.

The first amended complaint sets forth five causes of action. The first cause of action asserts that there is an implied contract between plaintiffs and the district under which defendants were required to grant the salary increases; the second alleges that because of certain representations made by the district during wage negotiations with the IBEW and relied upon by plaintiffs the district is estopped from refusing to grant the increases. In the third cause of action Youngman avers that he is bringing the action on behalf of other employees of the district who are similarly situated. The fourth alleges an express oral contract based upon a represen-

tation to Youngman by an authorized employee of the district that annual increases would be granted, and the fifth is based on an estoppel because of this representation.

Plaintiffs pray for a judgment declaring that Youngman and the district's other employees were entitled to a one-step merit increase in 1965 and thereafter, and an order requiring defendants to take all steps necessary to grant the wage increases.[1]

Defendants demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer also asserted that the complaint was uncertain in that plaintiff had indicated no legal authority for binding the district by implication, that it did not disclose facts showing the existence of an agreement between plaintiffs and defendants[2] or the terms thereof, that the ''personnel policies and practices'' referred to in the complaint were mere conclusory recitals left to surmise, and that the counts were inconsistent.

The demurrer was sustained on the grounds that the complaint did not indicate ''wherein the defendants under the circumstances alleged herein, could be bound by implication''[3] and that the oral agreement alleged in the fourth cause of action ''does not comply with the legal requirements for procedures to be followed by an irrigation district in entering into a contract.'' We conclude that these grounds are insufficient to justify sustaining the demurrer and the trial court erred in sustaining the demurrer as to the first four causes of action.

In considering the sufficiency of a pleading, we are bound by the rule that on appeal from a judgment entered on demurrer, the allegations of the complaint must be liberally

---

[1]There is no issue involving future years, for the merit step schedule of increases in salary was restored by the board as to wages for 1966 and subsequently.

[2]Although the demurrer states that the complaint is ''uncertain'' with respect to these grounds and uncertainty is a ground for a special rather than a general demurrer, the objections that the complaint fails to indicate the district can be bound by implication and that the allegations do not show the existence of an agreement are grounds for a general rather than a special demurrer. (See 2 Witkin, Cal. Procedure (1954) § 485, et seq.) We therefore treat the matter as though defendants had stated these grounds as the basis for a general demurrer.

[3]This ground for sustaining the demurrer was not specifically set forth by the trial court in its order sustaining the demurrer to the first amended complaint. However, the court sustained the demurrer to plaintiffs' original complaint upon this ground and in its ruling on the second pleading it stated that there ''appears to be no essential difference between the Original Complaint and the First Amended Complaint.''

construed with a view to attaining substantial justice among the parties. (Code Civ. Proc. § 452.) Even as against a special demurrer a plaintiff is required only to set forth the essential. facts of his case with reasonable precision and with particularity sufficient to acquaint a defendant with the nature, source and extent of his cause of action. (*Smith* v. *Kern County Land Co.* (1958) 51 Cal.2d 205, 206, 209 [331 P.2d 645].) If there is any reasonable possibility that the plaintiff can state a good cause of action, it is error to sustain a demurrer without leave to amend. (*MacLeod* v. *Tribune Publishing Co.* (1959) 52 Cal.2d 536, 542 [343 P.2d 36]; *Lemoge Electric* v. *County of San Mateo* (1956) 46 Cal.2d 659, 664 [297 P.2d 638].)

The first cause of action alleges the following: for several months prior to January 1, 1965, the IBEW, which is suing on its own behalf and on behalf of its members who are employees of the district, discussed future wages with defendants. During this period the district maintained for all classifications of employees a salary schedule, which established five steps within each employee's classification, each step providing a higher wage rate. It was the "announced practice" of the district to review each employee's situation annually and to advance the employee to the next step if his performance merited advancement. By this means, a satisfactory employee could reach the top wage rate for his classification after five years. "Said practice is contained in Personnel Policies adopted by the District after discussion and negotiation with the IBEW, and disseminated to its employees."

Youngman was employed by the district in April 1963 as a Utility Foreman Grade III and in April 1964 he was advanced one step and his salary raised commensurately "in accordance with said practice of annual step increases for merit." The other employees of the district, with few exceptions, also received advancement. On the basis of the "practices and commitments described" Youngman was due for review and advancement another step in April 1965 since he had performed satisfactory service, but defendants refused to advance him or any other employee and have arbitrarily and capriciously discontinued the "previously published, announced and effected practice of annual review for merit step increases."

Finally it is alleged that "by reason of the foregoing practice, conduct, salary schedules and Personnel Policies, there has existed and continues to exist between the District and

each employee an implied agreement by the District to review and advance employees one step within their respective classifications on or about their employment anniversary date in that year . . . and to pay those employees who were advanced the salary specified for such step. . . ."

 Defendants insist that the trial court properly sustained the demurrer to the first cause of action because the district has only such powers as are expressly granted by statute or necessarily included in the exercise of the powers granted (*Moody* v. *Provident Irr. Dist.* (1938) 12 Cal.2d 389, 394 [85 P.2d 128]; *Bottoms* v. *Madera Irr. Dist.* (1925) 74 Cal.App. 681, 702 [242 P. 100]), and no specific authority is granted by statute permitting the district to enter into an implied contract.

The district is a public agency organized under sections 20500 et seq. of the Water Code.[4] Under section 21185 the board may employ agents and employees, prescribe their duties, and fix their salaries. The district may make contracts necessary to carry out its purposes (§ 22230) and perform all acts necessary to carry out the functions accorded to it by statute (§ 22225). The Water Code prescribes no formal requirements for the consummation of an employment contract by the board.

It has been said that the essential difference between an implied and an express contract is the mode of proof. (*Silva* v. *Providence Hospital of Oakland* (1939) 14 Cal.2d 762, 773 [97 P.2d 798].) That is, the terms of an express contract are stated in words, while those of an implied agreement are manifested by conduct. (Civ. Code, §§ 1620, 1621.)

There seems little doubt that the general provisions giving the district the power to enter into contracts of employment without specifying any formal requirements for such contracts were intended to apply to both implied and express contracts since the only significant difference between the two is the evidentiary method by which proof of their existence and terms is established. Governmental subdivisions may be bound by an implied contract if there is no statutory prohibition against such arrangements. (*County of Sonoma* v. *Santa Rosa* (1894) 102 Cal. 426, 431 [36 P. 810]; see *City of Pasadena* v. *County of Los Angeles* (1953) 118 Cal.App.2d 497, 500 [258 P.2d 28]; *Nash* v. *City of Los Angeles* (1926) 78 Cal.App. 516, 520-522 [248 P. 689].)

 In pleading a cause of action on an agreement implied

---

[4]All references are to the Water Code unless otherwise noted.

from conduct, only the facts from which the promise is implied must be alleged. (See 2 Chadbourn, Grossman & Van Alstyne, Cal. Pleading, § 1011, p. 159.) Here the first cause of action alleges that the district had an "announced practice" to grant annual wage increases, that this "practice" was adopted "after negotiation" with the IBEW, that the employees were aware of the "practice," and that the district had complied with its "practice" in the prior year. While not a model of precise pleading, these allegations appear to set forth circumstances from which could be found an implied agreement, reached after negotiation with the IBEW, that the district would grant yearly increases. Therefore, the allegations of the first cause of action are sufficient to withstand a general demurrer.[5]

 The third cause of action merely incorporates by reference the allegations of the first and adds allegations necessary to assert a class suit by Youngman on behalf of his fellow employees similarly situated. There is no claim that this action is improperly brought as a class suit or that the allegations of the third cause of action are defective for reasons other than those discussed above with reference to the first cause of action. It follows, therefore, that the general demurrer to the third cause of action was also improperly sustained.

 Most of the allegations of the first cause of action are incorporated in the fourth, which asserts an express contract between the district and Youngman. It is alleged that Harold Gleason, who was a superintendent of the district "with full authority to act" in its behalf "with respect to hiring of employees, and to enter into contracts with respect thereto" and who was acting within the scope of his authority, had represented to Youngman in April 1963 that it was the "established practice" of the district to grant merit step increases on or about the anniversary date of employment and that he would be granted such advancement in April of each year. "[B]y reason of the foregoing practice, conduct, salary schedules and Personnel Policies, there has existed and continues to exist between the District and plaintiff Youngman

___

[5]Defendants claim that the district's employees are hired on a month-to-month basis, and therefore no agreement to grant annual wage increases may be implied. However, under such circumstances a contract based on a conditional promise could be implied under which the promisor would be required to honor his offer if the employee continued in the district's employ until the time the annual increase was to go into effect.

an express oral agreement'' by which the district is obligated to review plaintiff's situation and advance him one step in April of each year and to pay the increased salary appropriate to the higher step.

As we have seen, the trial court sustained the demurrer to this cause of action on the ground that the alleged agreement did not comply with legal requirements for procedures to be followed by an irrigation district in entering into a contract. Defendants assert that under the statutes set forth above, only the board may hire employees or agree to wage increases and that it could not validly delegate this function to its superintendent.

Whether or not the board could validly delegate to the superintendent the power to hire employees is irrelevant since there is no claim that the manner in which Youngman was employed was improper; the issue is the promise of a wage increase. As to the superintendent's representations, the allegations merely are that he communicated the board's ''established practice'' to Youngman and stated that he would be granted increases in accordance with the practice. It cannot be seriously doubted that the superintendent may communicate the board's policy and practice to prospective employees. Whether there was such a practice and whether the superintendent went beyond his authorization in adapting that practice specifically to Youngman are questions for the trier of fact. For purposes of pleading the allegation is clearly sufficient to aver that the superintendent was acting as the district's agent. (See 2 Witkin, Cal. Procedure (1954) § 255, p. 1231; 2 Chadbourn, Grossman & Van Alstyne, *op. cit.*, § 1021, p. 175.)[6]

There is no merit to defendants' position that the board itself could not promise future wage increases because such authority was not expressly granted by statute. The power to enter into contracts of employment, to fix salaries (§ 21185), and to perform all acts necessary to carry out these functions (§ 22225) clearly authorizes the board to consummate agreements regarding future wages, in the absence of specific restrictions to the contrary. No provisions of the Water Code prescribe any formal procedural requirements of the board

[6]Chadbourn states at page 175, ''The general rule is well established in California that where the action is based upon a contract made by the defendant's agent, it is sufficient to allege directly that the contract was made by the defendant, irrespective whether the agency in question is express or ostensible, or whether it is based upon the theory of ratification.''

before it may enter into an employment contract. It follows, therefore, that the trial court improperly sustained the demurrer to the fourth cause of action.

 We come, finally, to the allegations of the second and fifth causes of action, which assert an estoppel against defendants. The fifth cause of action incorporates by reference most of the allegations of the first as well as the allegations of the fourth cause of action relating to the representations made by Gleason in April 1963, when Youngman was employed, that he would be granted a merit step increase in April of each year. It is then alleged that Youngman relied upon this express oral promise by accepting employment with the district, continuing in its employ, and refraining from accepting another job, and that the district is thereby estopped from refusing to consider and grant him a merit step increase.

These allegations attempt to state a cause of action for promissory estoppel.[7] Under this doctrine a promisor is bound when he should reasonably expect a substantial change of position, either by act or forbearance, in reliance on his promise, if injustice can be avoided only by its enforcement. (See Rest., Contracts, § 90; 1 Witkin, Summary of Cal. Law (7th ed. 1960) § 85, p. 90.) The purpose of this doctrine is to make a promise binding, under certain circumstances, without consideration in the usual sense of something bargained for and given in exchange. If the promisee's performance was requested at the time the promisor made his promise and that performance was bargained for, the doctrine is inapplicable.

*Healy* v. *Brewster* (1963) 59 Cal.2d 455, 463 [30 Cal.Rptr. 129, 380 P.2d 817], explained: "Under such circumstances, the only reliance which can make the promisor's failure to perform actionable is the promisee's doing what was requested. If that reliance was detrimental, it would constitute consideration. If it was not detrimental, it would not constitute consideration; and since detrimental reliance is an essen-

---

[7]The doctrine of equitable estoppel, by contrast, rests on the theory that the party to be estopped *may not prove certain facts* if he has by his conduct or declarations misled another to his prejudice. (See, e.g., *Scott* v. *Federal Life Ins. Co.* (1962) 200 Cal.App.2d 384, 391 [19 Cal. Rptr. 258]; *General Motors Accept. Corp.* v. *Gilbert* (1961) 196 Cal. App.2d 732, 742 [17 Cal.Rptr. 35]; Evid. Code, § 623; see 4 Witkin, Summary of Cal. Law (1960) § 94, p. 2870.) Here plaintiffs are not seeking to prevent defendants from showing a state of facts or raising a defense but are attempting to compel them to perform an alleged promise. Thus, cases such as *Ruinello* v. *Murray* (1951) 36 Cal.2d 687 [227 P.2d 251], are inapposite.

tial feature of promissory estoppel, that doctrine could not be invoked to make the promisor liable. (See Snyder, *More on Promissory Estoppel* (1959) 26 Brooklyn L.Rev. 41; Snyder, *Promissory Estoppel in New York* (1948) 15 Brooklyn L.Rev. 27.) In other words, where the promisee's reliance was bargained for, the law of consideration applies; and it is only where the reliance was unbargained for that there is room for application of the doctrine of promissory estoppel.''

Here, plaintiffs allege that the superintendent promised Youngman that he would be granted a merit step increase in April of each year and that Youngman relied upon this promise in accepting employment with the district, continuing in its employ, and refraining from accepting a job elsewhere. It seems clear under these allegations that the district's promise, through its agent, that Youngman would be afforded a raise in April of each year, was part of the bargain under which Youngman entered the district's employ. By remaining in his position and presumably rendering satisfactory service he performed his part of the bargain and rendered the consideration called for by the employment contract. There is no occasion, therefore, to rely upon the doctrine of promissory estoppel, which is necessary only to supply consideration for a promise when no actual consideration was given by the promisee.

Plaintiffs rely upon a number of cases in which promissory estoppel was held to apply to require employers to pay pensions or bonuses to their employees, but in none of them was the compensation specifically promised as a part of the bargain under which the plaintiff accepted employment. (*Frebank Co.* v. *White* (1957) 152 Cal.App.2d 522 [313 P.2d 633]; *West* v. *Hunt Foods, Inc.* (1951) 101 Cal.App.2d 597 [225 P.2d 978]; *Hunter* v. *Sparling* (1948) 87 Cal.App.2d 711 [197 P.2d 807].)

The second cause of action also alleges a promissory estoppel, but on the basis of a different promise. After incorporating the allegations of the first cause of action, plaintiffs allege as follows: ''Plaintiff IBEW, in negotiating with the District with respect to 1965 wage rates and conditions of employment, and plaintiff Youngman, in accepting and continuing in employment with the District on and after January 1, 1965, acted in reliance upon representations by defendants, express and implied, that general wage increases effective January 1, 1965, would not preclude or in any way affect merit step increases in accordance with said established District policy. Plaintiffs . . . contend . . . that the District is

estopped, on the basis of said prior practice, conduct, Salary Schedules and Personnel Policies, from refusing to consider and grant such merit step increases.''

These allegations are insufficient to invoke the doctrine of promissory estoppel. The only promise of the district upon which plaintiffs allege reliance is that general wage increases in 1965 would not preclude merit step increases in accordance with the district's policy. Such an allegation cannot be construed to allege an affirmative promise of the district to grant merit step increases. In addition, there is no assertion that the IBEW or its members suffered any detriment as a result of the alleged reliance; it seems evident that Youngman, who was employed by the district in April 1963, could not have relied upon a promise made thereafter in originally accepting employment.

Although the trial court properly sustained a general demurrer to the second cause of action, plaintiffs were afforded only one opportunity to amend their complaint and it cannot be said that there is no reasonable possibility that some of the defects described above cannot be remedied. We hold, therefore, that the general demurrer to the second cause of action was improperly sustained without leave to amend.

Abundant authority holds that a court may not interfere with the board's discretion in determining salaries (see, e.g., *Emerson* v. *Board of Trustees* (1937) 23 Cal.App.2d 432, 434 [73 P.2d 935]), but the cases are inapposite to the issues involved here since plaintiffs are not seeking to compel the board to grant salary increases on the basis of its discretionary power but are attempting to enforce alleged contracts already made by the board in the exercise of its discretion.

In view of these conclusions, we need not consider plaintiffs' argument that the complaint states a cause of action based upon the district's refusal to bargain with the IBEW in good faith.

As shown above, defendants interposed grounds of special as well as general demurrer. It is the rule that if a trial court sustains a demurrer based upon both general and special grounds and its order mentions only the general ground, impliedly the ruling was made either without consideration of the special grounds or upon a determination that they were not well taken. Since the general demurrer was sustained erroneously as to the first four causes of action, the trial judge is directed to consider the special grounds. (*Stowe*

v. *Fritzie Hotels, Inc.* (1955) 44 Cal.2d 416, 425-426 [282 P.2d 890].)

The judgment is reversed with directions to the trial court to overrule the demurrer as to the first four causes of action and to sustain the demurrer as to the fifth.

Traynor, C. J., McComb, J., Peters, J., Burke, J., Sullivan, J., and Peek, J.,* concurred.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.