[Civ. No. 6939. Fifth Dist. June 10, 1983.]

BONNIE JACK HEFFINGTON, Plaintiff and Appellant, v.
COUNTY OF STANISLAUS, Defendant and Respondent.

COUNSEL

Van Dyke, Shaw & Schuckman and Thomas H. Van Dyke for Plaintiff and Appellant.

Trimbur, Davis & Clark and Kevin L. Clark for Defendant and Respondent.

OPINION

**BROWN (G. A.), P. J.**—Plaintiff appeals from a judgment of dismissal as to the defendant County of Stanislaus after the latter's demurrer to plaintiff's ninth cause of action was sustained without leave to amend. The county is the sole defendant in the ninth cause of action.[1] There are eight other causes of action against defendants other than the county which are not at issue in this appeal.

██ ██ The action is one commonly labeled a "civil rights action" under 42 United States Code section 1983.[2]

Plaintiff alleged four separate violations of his constitutional rights. On an unspecified date, he was interrogated without being given his *Miranda* rights. On October 12, 1977, his residence was searched pursuant to an invalid search warrant, and $4,000 in cash was unlawfully seized. On November 23, 1977, he was arrested without probable cause. Finally, on July 31, 1978, he was assaulted by a police officer in contravention of the Fourth Amendment.

The issue is whether the averments are sufficient to state a cause of action against the county. The critical allegations are contained in paragraphs II and III of the ninth cause of action which in relevant part state:

---

[1]The judgment of dismissal appealed from also includes the district attorney, Donald Stahl, who was a named defendant in other causes of action. However, appellant concedes the appeal relates only to the County of Stanislaus.

[2]Title 42 United States Code section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia." A state court is a proper forum for a section 1983 suit. (*Martinez* v. *California* (1980) 444 U.S. 277, 283, fn. 7 [62 L.Ed.2d 481, 488, 100 S.Ct. 553, 558].)

## "II

"That the County of Stantislaus [*sic*], by virtue of its policy and custom, encourages its agents to harass and annoy certain citizens labeled as undesirable by it.

## "III

"As a proximate result of this custom, defendants were encouraged to unlawfully deprive plaintiff of his constitutionally protected rights . . . ."

Initially, the county contends that plaintiff may not challenge the trial court's ruling since plaintiff failed to seek leave to amend his complaint. This meritless argument comes 44 years too late. (See Code Civ. Proc., § 472c, adopted in 1939; *Scott* v. *City of Indian Wells* (1972) 6 Cal.3d 541, 550 [99 Cal.Rptr. 745, 492 P.2d 1137].)

■ We are bound to construe the allegations of the complaint liberally with a view toward attaining substantial justice among the parties. (*Youngman* v. *Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 244-245 [74 Cal.Rptr. 398, 449 P.2d 462].)

In passing upon the question of whether a cause of action is stated against the county, we must be guided by the leading case of *Monell* v. *New York City Dept. of Social Services* (1978) 436 U.S. 658 [56 L.Ed.2d 611, 98 S.Ct. 2018], as that case has been interpreted by the federal circuit courts of appeals. ■ In *Monell* the Supreme Court overruled its former decision in *Monroe* v. *Pape* (1961) 365 U.S. 167 [5 L.Ed.2d 492, 81 S.Ct. 473] and held municipalities could be sued directly under 42 United States Code section 1983.

As plaintiff concedes, a cause of action may not be stated pursuant to a mere respondeat superior theory. (*Monell, supra,* at p. 691 [56 L.Ed.2d at p. 635].) Rather, the plaintiff must allege that the local governmental entity infringed his rights pursuant to either a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the entity, or in the alternative, that his rights were infringed by governmental "custom." (*Id.,* at pp. 690-691 [56 L.Ed.2d at pp. 635-636].) If the plaintiff seeks to show that he was injured by governmental "custom," he must show that the governmental entity's "custom" was "made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, . . ." (*Id.,* at p. 694 [56 L.Ed.2d at p. 637].)

■ Plaintiff does not contend that the county acted against him pursuant to any formally established policies. Rather, he contends that respondent had a

"custom" of harassing citizens similarly situated to himself and violating citizens' constitutional rights.

Several leading federal court cases have interpreted the *Monell* holding. In *Wolf-Lillie* v. *Sonquist* (7th Cir. 1983) 699 F.2d 864, the plaintiff sued a county sheriff in his official capacity. The court stated, at page 870: "Damages may be awarded against a defendant in his official capacity only if they would be recoverable against the governmental entity. *Monell, supra*; *Hughes* v. *Blankenship,* 672 F.2d 403, 406 (4th Cir. 1982). The law is clearly established that a local governmental entity, such as Kenosha County, will be liable when through the execution of a government's policy or custom, whether made by its law-makers or by those whose edicts or acts may fairly be said to represent official policy, another's rights are violated. *Monell, supra* 436 U.S. at 694, 98 S.Ct. at 2037; *Powe* v. *City of Chicago,* 664 F.2d 639, 649 (7th Cir. 1981). While the question of what actions constitute a 'policy or custom' is not fully resolved by the courts, see *Bowen* v. *Watkins,* 669 F.2d 979, 989 (5th Cir. 1982), it is clear that a well-settled municipal practice can establish a 'custom or usage' with the force of law. *Adickes* v. *S.H. Kress & Co.,* 398 U.S. 144, 169, 90 S.Ct. 1598, 1614, 26 L.Ed.2d 142 (1970). Liability may be predicated pursuant to a governmental 'custom' even though such a custom has not received formal approval through the body's decision making channels. *Monell, supra* 436 U.S. at 690-91, 98 S.Ct. at 2035-36. As Justice Harlan noted in *Adickes,* 'settled practices of state officials may . . . transform private predilections into compulsory rules of behavior no less than legislative pronouncements.' *Adickes, supra* 398 U.S. at 168, 90 S.Ct. at 1614. Informal actions, if they reflect a general policy, custom, or pattern of official conduct which even tacitly encourages conduct depriving citizens of their constitutionally protected rights, may well satisfy the amorphous standards of § 1983."

*Powe* v. *City of Chicago* (7th Cir. 1981) 664 F.2d 639 supports the view that appellant stated a cause of action against the county under *Monell.* There, the plaintiff alleged four unlawful arrests at the hands of the Chicago police. The trial court dismissed the complaint as against the City of Chicago and the County of Cook. The court of appeals reversed the trial court, holding: "Thus, that Powe's complaint does not point to a specific, articulated policy of the city or the county is not fatal to his claim. His complaint will withstand dismissal if the facts alleged, together with reasonable inferences to be drawn from them, could lead a reasonable factfinder to conclude that the actions of the county and city employees, by which Powe was unconstitutionally deprived of his liberty, were the product of some policy or custom of the municipal entities." (*Id.,* at p. 650.)

"By contrast, the allegation of a pattern of conduct or a series of acts violative of constitutional rights will in many cases raise an inference of municipal policy. . . .

"In the present case, Powe has alleged that he was the victim of a series of unlawful arrests, each arrest based upon the same, allegedly invalid, warrant. In our view, his allegations are sufficient to raise the inference that the municipal defendants are responsible for the challenged arrests. The complaint indicates that the challenged probation-violation warrant was prepared, promulgated, and executed by various employees of separate departments of the defendants' law enforcement agencies." (*Id.*, at p. 651.)

*Turpin* v. *Mailet* (2d Cir. 1980) 619 F.2d 196, cert. den., 449 U.S. 1016 [66 L.Ed.2d 475, 101 S.Ct. 577], is even more supportive of appellant's cause. There, Police Officer Skeens subjected the plaintiff to excessive force pursuant to a lawful arrest. The plaintiff was awarded damages in a subsequent lawsuit. Thereafter, the plaintiff was arrested for disorderly conduct, although the charges were dropped in a month's time. The plaintiff brought a section 1983 cause of action against the city, claiming that his second arrest was prompted by the city's failure to discipline Officer Skeens. These allegations were deemed sufficient to entitle the plaintiff to a trial. (*Id.*, at p. 202.) In so holding, the court stated: "We must therefore reject at the outset appellant's suggestion that an 'official policy' within the meaning of *Monell* cannot be inferred from informal acts or omissions of supervisory municipal officials. Indeed, by holding that a municipality can be held liable for its 'custom' *Monell* recognized that less than formal municipal conduct can in some instances give rise to municipal liability under § 1983. To require that senior officials must have formally adopted or promulgated a policy before their conduct may be treated as 'official' would for present purposes render *Monell* a nullity, exalting form over substance." (*Id.*, at p. 200.)

"The allegations here clearly meet that standard. We see no reason why an official policy cannot be inferred from the omissions of a municipality's supervisory officials, as well as from its acts. The issue of authorization, approval or encouragement is generally one of fact, not law. For example, where senior personnel have knowledge of a pattern of constitutionally offensive acts by their subordinates but fail to take remedial steps, the municipality may be held liable for a subsequent violation if the superior's inaction amounts to deliberate indifference or to tacit authorization of the offensive acts. [Citations.]" (*Id.*, at p. 201; fn. omitted.) (See also *Berry* v. *McLemore* (5th Cir. 1982) 670 F.2d 30, 32-33; *Murray* v. *City of Chicago* (7th Cir. 1980) 634 F.2d 365, 367, cert. dism. 456 U.S. 604 [72 L.Ed.2d 366, 102 S.Ct. 2226].)

While the complaint does not expressly allege that any of the county's lawmakers were aware of the alleged constitutional violations, it is a matter of judicial notice (Evid. Code, § 452) that Don Stahl, one of the individual defen-

dants named in the complaint, is the District Attorney of Stanislaus County.[3] Under *Monell,* a district attorney is one "whose edicts or acts may fairly be said to represent official policy, . . ." (*Monell, supra,* 436 U.S. 658, 694 [56 L.Ed.2d 611, 638]; see also *Wolf-Lillie* v. *Sonquist, supra,* 699 F.2d 864, 870, indicating that a county sheriff's actions represent the official policy of the county.) Moreover, since this case is still at the pleading stage, it would appear that the allegations in appellant's complaint are sufficient to implicate those who represent the county's official policy. (*Turpin* v. *Mailet, supra,* 619 F.2d 196, 200-202.)

The county relies heavily upon the district court decision of *Zaragoza* v. *City of San Antonio, Tex.* (W.D.Tex. 1979) 464 F.Supp. 1163. In light of the subsequent court of appeals cases we have cited, we accord no weight to that aberrant district court case.

While plaintiff's complaint is not a model of pleading, perhaps rendering it vulnerable to a special demurrer for uncertainty (Code Civ. Proc., § 430.10, subd. (f)), the complaint was sufficient against a general demurrer.

The judgment of dismissal is reversed.

Hanson (P. D.), J., and Woolpert, J., concurred.

---

[3]The trial court apparently sustained Stahl's demurrer since prosecutors enjoy immunity from section 1983 causes of action. (*Imbler* v. *Pachtman* (1976) 424 U.S. 409 [47 L.Ed.2d 128, 96 S.Ct. 984].) However, the county does not enjoy any derivative immunity. It may still be held liable notwithstanding Stahl's enjoyment of immunity. (*Rheuark* v. *Shaw* (N.D.Tex. 1979) 477 F.Supp. 897, 923, affd. in part and revd. in part on other grounds (5th Cir. 1980) 628 F.2d 297, cert. den. 450 U.S. 931 [67 L.Ed.2d 365, 101 S.Ct. 1392].)